## HENDERSON V. COLEMAN ET AL.

### (No. 606.)

Principal and Agent—Declarations of Agent—Admissibility— Damages—General Damages—Special Damages—Pleadings— Evidence—Trespass—Depasturing of Land by Sheep—Damages —Trial—Admission of Evidence—Incompetent or Irrelevant Answer of Witness—Objections—Waiver—Appeal and Error— Evidence—Instructions—Harmless Error—Exemplary Damages—Evidence—Cross-Examination—Appeal and Error—Permitting Part of Judgment to be Remitted to Save Reversal— Costs—Apportionment.

1. Declarations of an agent when made in the course of, and accompanying, the transaction which is the subject of inquiry, and acting within the scope and limits of his authority, do not come within the general rule excluding hearsay evidence, for the reason that such declarations, as well as the acts of the agent, under such circumstances, are considered and treated as the declarations of his principal.

2. The declarations of an alleged agent are not admissible in evidence unless there is other evidence of the agency, for the fact of agency cannot be established by evidence alone

of such declarations, though if the agency is sufficiently proved after the declarations have been admitted, the error of this admission in the first instance may be cured.

3. The declarations of an alleged agent may be received provisionally as verbal acts indicating that he was acting on another's behalf, not his own, leaving it to subsequent proof to establish his connection as agent with the party sought to be charged.

4. The fact of agency and the nature and extent of the agent's authority are questions for the jury to determine under proper instructions, and it is not for the court to say when proof of the alleged agent's declarations is offered, whether upon the evidence it had been fully and satisfactorily shown that the person making them was the agent of the party sought to be charged. Under such circumstances any evidence tending to prove the agency is admissible, and if evidence has first been introduced tending to prove the agency or to make out a *prima facie* case thereof, the declarations may then be shown and the whole case passed upon by the jury.

5. Held, upon an examination of the evidence, that it was sufficient to justify the admission of statements made by a herder in charge of certain sheep found trespassing upon uninclosed land of plaintiffs to the effect that the sheep belonged to the defendant; that he was in the defendant's employ; that defendant had told him to let the sheep feed where they pleased; that he had been moved upon the land by defendant's camp mover, who told him to stay there; that he could not leave but had to stay with the sheep; and that he would not go until he got ready. *Held,* further, the whole matter was for the jury, and the defendant was fully protected by an instruction that before the declarations can be binding upon the defendant, it must be proven by a fair preponderance of the evidence that the person making them was at the time in the defendant's employ, and acting within the line of his authority, and while in charge of defendant's sheep.

6. Statements and acts of persons alleged to have been in defendant's employ and in charge of his sheep held to have been properly admitted in an action for damages caused by trespassing sheep, which defendant claimed did not belong to him; it appearing that at the time the proof was offered and admitted, there had been sufficient independent proof of their agency, the nature of their duties, and their control of the sheep at the time of the trespass, to render

the evidence of their acts and statements relating to the trespass admissible.

7. Plaintiffs sued to recover damages resulting from an alleged trespass upon their lands by defendant's sheep, and in the driving of their cattle therefrom, causing said cattle to wander to other ranges for feed and water. Evidence was admitted over objection to show that the cattle of plaintiffs were being pastured on the land preparatory to·shipping them to market, and as a result of the alleged tortious acts the cattle not only lost weight, but failed to gain in weight as they would have done had they not been prevented from pasturing upon such land of plaintiffs, which had been kept for that purpose. *Held*, that under proper allegations of damage caused by their being deprived through the alleged tortious acts of the use of the pasturage and water thereon for their cattle, and of the other provision that had been there made for their care, the plaintiffs were entitled to show what the actual damages were, so far as they could be shown with reasonable certainty and to have been the direct result of the tortious acts; and that, under such circumstances, damages caused by the loss in weight of the cattle, or their failure to increase in weight, as it might reasonably be expected they would have done had they been allowed to remain upon the premises, were recoverable.

8. General damages are those which necessarily and by implication of law result from the wrong complained of, and may be shown under a general allegation of damages.

9. Special damages are those that are the natural but not the necessary result of the wrong complained of, and, to prevent surprise to the defendant, they must be particularly specified in the petition, to permit evidence thereof upon the trial.

10. The petition by appropriate allegations charged that the defendant had trespassed upon certain lands of the plaintiffs by driving and pasturing thereon a large herd of sheep, which resulted not only in the complete destruction of the pasturage, but in causing the cattle of plaintiffs to be driven from the land. It was also alleged that the plaintiffs, at the time of the trespass, were pasturing their cattle on the land, which had been kept for the purpose, preparatory to their shipment to market as beef cattle; that through the alleged tortious acts of the defendant said cattle were prevented from obtaining feed and water on the land, or in the vicinity thereof, but were compelled

to scatter and wander to distant ranges in search of feed and water, to the great injury and damage of the plaintiffs; that the plaintiffs had no other suitable range or pasture for their said cattle and could obtain none, to the great injury and damage of said stock; and that because of the alleged wrongful acts of the defendant in destroying the pasture on the lands, and driving the cattle of plaintiffs therefrom, the plaintiffs had been injured and damaged in the sum of $2500, the said injury arising to the said cattle owned by the plaintiffs. *Held,* that the allegations showed an intention to lay the foundation for the recovery of damages beyond the mere value of the pasturage consumed and destroyed, and were sufficient to justify proof of special damages on account of the injury to the cattle, at least in the absence of a motion to make the petition more definite and certain.

11. It being alleged as a foundation for special damages in an action for trespass that cattle of plaintiffs had been driven from the land where they were pasturing and suffered injury and damage as the result thereof through the loss of feed and water, evidence that the plaintiffs were preparing said cattle for shipment to market as beef cattle was relevant for the purpose of showing the immediate effect of their depreciated condition and value, and that the plaintiffs were actually damaged thereby.

12. The admission of evidence showing that after the trespass the plaintiffs were compelled to feed hay to some of the cattle because of their exceptionally poor condition as a result of the alleged trespass *held* not to have been objected to in a manner calling for a ruling as to its admissibility.

13. An objection to a question does not reach an improper answer, and where the question is not objectionable, but the answer is incompetent or irrelevant, an objection should be made to the answer, in order to obtain a ruling upon its admissibility; the proper practice in such case being to move to strike out the answer or such part thereof as is deemed to be incompetent or irrelevant.

14. A party who has permitted incompetent or irrelevant evidence to be received without seasonable objection is not entitled as of right to an instruction withdrawing it from the consideration of the jury.

15. To obtain a ruling upon the admissibility of evidence, it is only necessary that it be objected to when its objectionable

nature first becomes apparent, as where this is disclosed for the first time upon cross-examination.

16. In an action for trespass alleged to have resulted in the driving of the cattle of plaintiffs from the land, *held* that evidence of the expense of plaintiffs in gathering the cattle was improperly admitted, there being no allegation in the petition that the plaintiffs were put to any expense or trouble in gathering the cattle, but the allegations of special damages relating only to injury to the cattle.

17. In an action for trespass, wherein it was alleged that defendant had driven and pastured upon the land a large herd of sheep, and the defense was that the sheep driven on the land did not belong to defendant; *held,* that testimony was properly admitted showing statements made by the defendant before the trespass to the effect that he could go on the land of anyone with his sheep and damages therefor could not be recovered, or if at all, not in a sufficient amount to pay for the expense and trouble of bringing suit; the conversation in which the statements were made relating to the land upon which the trespass was alleged to have been committed. The evidence was relevant upon the chief point in controversy, viz: whether the trespass had been committed by defendant's sheep, and by men in his employ, and with his knowledge, and also upon the question of damages, as tending to show the defendant's state of mind with reference to grazing upon land of other parties.

18. In an action for trespass, wherein it was alleged that defendant had driven and pastured a large herd of sheep upon the land, the evidence tending to show that the sheep had completely consumed the pasture remaining on the land, the fact that the sheep were there only part of the time did not interfere with the right to show the value of the pasture for the season, and, therefore, the fact that plaintiffs had cattle on the land for a short time prior to the trespass did not render inadmissible evidence to show the value of the pasture for the season for the number of cattle plaintiffs were pasturing on the land.

19. Evidence was admitted in an action for trespass committed by driving and pasturing sheep on the land of plaintiffs that the land was a good sheep camp. *Held,* that the evidence was not relevant, except that it might possibly have tended to show the inducement or motive in establishing a camp thereon for defendant's sheep, but its admission, even if not relevant, was not harmful or prejudicial.

20. Where exemplary damages are claimed in an action for trespass, it is proper to prove the financial condition of the defendant, and evidence of the value of defendant's property is relevant upon the question, though, standing alone, it would not establish his worth, since the property might be incumbered, and the defendant might be otherwise indebted.

21. Evidence may be relevant and admissible as such, though not sufficient in itself to establish the fact to which it relates.

22. The latitude of cross-examination is so largely within the discretion of the trial court, that, as a general rule, it must appear that such discretion was flagrantly abused before a verdict will be disturbed on that ground.

23. The purpose of introducing an affidavit of the defendant filed in the action having been to show the making of statements contradicting his testimony; the fact that defendant admitted having stated in the affidavit the matters therein contained, did not render the admission of the affidavit error, but, in any event, it was not prejudicial.

24. An affidavit was filed in an action by the defendant in support of an objection to the jurisdiction of the court stating that at the time of the alleged service of summons upon him he was in another county than that in which the officer's return showed the summons to have been served. The affidavit was introduced in evidence on the trial by the plaintiff as contradicting the defendant's testimony concerning where he was about the time aforesaid, and the officer's return on the summons was also introduced and admitted. *Held,* that the officer's return was competent and relevant for the purpose of explaining the affidavit as to the time referred to therein as "the time of the alleged service as shown by said return."

25. There having been some evidence bearing on the question of the right to recover exemplary damages, sufficient to justify the submission of the question to the jury, it was not error to refuse an instruction to the effect that there was no evidence which entitled the plaintiffs to recover such damages.

26. Whether the declarations of an alleged agent were made at a time that would entitle them to consideration, if made by an agent acting within his authority, is a question for the court to determine when they are offered, and it is not necessary to submit that matter to the jury.

27. To establish the fact that the sheep of defendant had been driven and pastured upon the land of plaintiffs, in a suit to recover damages for trespass, the plaintiff introduced evidence of the declarations of alleged agents of the defendant to show that the trespassing sheep belonged to the defendant. *Held,* that such declarations being otherwise competent, the fact that they may have been made when the agent making them was away from the land and the sheep did not render them inadmissible, since the sheep were then on the land, the declarations· explained the act of taking and grazing the sheep thereon, and, therefore, formed a part of the transaction.

28. For the purpose of establishing that an alleged trespass upon the land of plaintiffs had been committed by defendant by driving and pasturing on the land a large herd of sheep, declarations of the herder immediately before taking the sheep on the land to the effect that he was going to do so and had been so directed were offered by plaintiffs and admitted in evidence *Held,* that such declarations were so intimately associated with the act of taking the sheep upon the land as to form a part of that act, or to constitute a part of the *res gestae.*

29. An instruction in an action for trespass upon uninclosed land that it is the duty of all persons to take notice of the stones and marks of the government survey, and that the plaintiffs were not required to otherwise mark the boundaries of their land, or inclose them, and that the fact that the lands were not inclosed or the boundaries thereof marked would not permit the defendant or any other person to intentionally invade the premises and destroy the crops or grasses thereon, was not prejudicial, even in the absence of evidence showing that the land was marked by government monuments; it appearing that the defendant and his employees were acquainted with the land, upon which it was alleged defendant's sheep had been driven, and that no claim was made that there was any mistake or want of knowledge as to the boundaries of the land alleged to have been trespassed upon.

30. In an action for trespass, which was alleged to have been committed by the driving and pasturing of defendant's sheep on the land, the defendant claimed that the trespassing sheep did not belong to him. *Held,* that an instruction stating that it was the duty of defendant to ascertain the boundaries of the lands of plaintiffs, and to prevent his sheep from being driven thereon and de-

pasturing the same, if he had notice that the plaintiffs owned or were entitled to the possession of the lands, was not objectionable on the ground that it assumed as proven the disputed fact that defendant's sheep had been driven on the land; the facts as to the trespass and whether or not it was committed by the defendant or his sheep being submitted to the jury under other instructions.

31. There being evidence tending to show knowledge on the part of the defendant that his sheep were upon the land of plaintiffs at the time alleged by plaintiffs, in an action brought to recover damages therefor, though he denied that the trespassing sheep belonged to him or were upon the land under his directions, and plaintiffs' evidence tending to show that the sheep were the defendant's, that they were driven and pastured on the land by his agents and employees, and that he was consenting thereto, an instruction was not prejudicial which contained a general statement of the law as to proving agency, including the statement that the jury might consider whether the alleged agent's acts had been ratified or the benefits thereof accepted or acquiesced in after a knowledge of the facts, if such evidence appears; notwithstanding that there was no evidence directly showing a ratification.

32. In an action for recovery of damages for the depasturing of land by sheep of defendant and injury to cattle of plaintiffs caused by such trespass, the question, whether an instruction was erroneous because permitting an award of exemplary damages, without regard to whether the defendant personally participated in or directed the trespass, if it was found to have been committed by someone in his employ, was not necessary to be considered, it appearing that to render the verdict they did the jury must have accepted the evidence of the plaintiffs in relation to the trespass, which tended strongly to show not only that the trespassing sheep were the defendant's but that he had knowledge of the trespass and directed it.

33. In an action to recover damages for depasturing of land by sheep and the driving of cattle of the plaintiffs therefrom, the plaintiffs were erroneously allowed to prove that they expended $150 in gathering the cattle after the trespass. The trial resulted in a verdict and judgment for the plaintiffs for the sum of $2500. *Held,* that the error in admitting evidence as to the expense of gathering the cattle was prejudicial only to the extent that there may have been a

recovery for such expense; and that as the amount which may have been included in the verdict on account of that matter was clearly ascertainable, the error did not require a reversal, if the plaintiffs preferred to remit the amount that may have been so erroneously included.

34. Where, to save a reversal of a judgment for $2500 the defendants in error, plaintiffs below, were allowed to remit $150 that may have been erroneously included in the judgment, *held,* that if such remittitur be filed, the judgment will in effect be affirmed in part and reversed in part, within the meaning of the statute authorizing in such case an apportionment of the costs between the parties in such manner as the court may deem equitable; and it was ordered that in such case one-third of the costs taxable for the transcript of the evidence and briefs be taxed against the defendants in error.

[Decided May 9, 1911.]          (115 Pac. 439.)
[Rehearing denied June 30, 1911.]     (115 Pac. 1136.)

ERROR to the District Court, Sheridan County; HON. CARROLL H. PARMELEE, Judge.

The material facts are stated in the opinion.

*E. E. Enterline* and *Ridgely & West,* for plaintiff in error.

The verdict and judgment rendered in this case is most unreasonable. It will be noticed that the right of plaintiffs to recover depended mostly, if not altogether, upon evidence that the trespass had been committed by persons claimed to have been in the employ of the defendant. Much of the testimony related to declarations of one Sherwin, who the plaintiffs claimed was the herder in charge of the trespassing sheep, and they sought to establish his employment and agency by testimony of his declarations. Such testimony was objected to for the reason that Sherwin's acts and declarations were not binding upon the defendant, unless and until it was first shown that they were performed and made in the line of his authority and while he was acting for the defendant. No authority can be found to sustain the rulings of the trial court upon that testimony.

Agency cannot be proved as against others than the alleged agent, by his declarations, and evidence of the declarations of an agent is not admissible to prove the extent of his authority. (10 Ency. Ev. 15-18.) Assuming for the sake of argument that there was some evidence tending to establish Sherwin's agency, the admitted testimony must have been prejudicial to the defendant, who denied that Sherwin was in his employ and that he ever authorized him to go upon the lands in question with any of his, (the defendant's) sheep. The question of agency was therefore clearly in dispute, and the plaintiffs were permitted to prove agency over objection by hearsay testimony of the most prejudicial kind. (Armour v. Ross, 110 Ga. 403; Osgood v. Pacey, 23 Ill. App. 116; R. R. Co. v. Johnson, 55 Kan. 344.) Not only did the defendant testify that Sherwin was not his agent, but he introduced other evidence tending to show that the trespassing sheep did not belong to him, but belonged to one James Shepardson, and that the herder in charge of such sheep was in the employ of Shephardson. Over objection also the plaintiffs were permitted to prove declarations of two other persons, Zimmerman and Heard, whom they claim were in the employ of the defendant. The declarations of these parties should have been excluded for the same reasons urged for the exclusion of Sherwin's declarations. Some of the testimony tended to prove a different trespass, and it was no doubt offered for the purpose of showing that the defendant authorized it. It was certainly prejudicial to the defendant to receive in evidence declarations made by Zimmerman, in which he stated that the defendant had told him to put the sheep on the lands of the plaintiff, and that he was not to take them away until the defendant came back.

The evidence that was admitted for the purpose of showing the intention of the plaintiffs and what they did with reference to marketing their cattle claimed to have been driven from the land was admissible, if at all, upon the theory that the plaintiffs were entitled to recover special

damages. But no special damages are alleged in the petition. It is not alleged that the plaintiffs intended to market their cattle in the fall of 1907, as they were permitted to prove, nor that they were unable to market the same; nor is it alleged what, if any, damages resulted by reason of their being unable to place said cattle upon the market. It is not alleged in the petition that the plaintiffs had to gather the cattle, nor that they did gather them, or were put to any expense in gathering them. It is not alleged in the petition that it was necessary for the plaintiffs to feed hay to their cattle, nor that they did feed hay to them. All the evidence relative to these matters of damage should have been excluded. Special damages are those arising directly, but not necessarily, or by implication of law, and cannot be recovered unless specially alleged. (1 Curr. Law, 861; 3 Id. 1095; 5 Id. 932-934; 7 Id. 1068-1069; 9 Id. 912-914; 5 Ency. Pl. & Pr. 719; Treadwell v. Whittier, 80 Cal. 575; Campbell v. Cook, 86 Tex. 630; R. R. Co. v. Emmert, 53 Neb. 237; Williams v. R. R. Co., 18 Utah, 210; Eisele v. Oddie, 128 Fed. 941; Ry. Co. v. Levy, 118 Ill. 525; O'Connor v. Pendergast, 99 Ill. App. 531; Harper v. R. R. Co., 17 Mo. App. 604; Ry. Co. v. Messick, 35 Tex. Civ. App. 591; R. R. Co. v. Hanberry (Ky.), 66 S. W. 417; Gordon v. Ry. Co. (Mont.), 104 Pac. 679; Cosgriff v. Miller, 10 Wyo. 190.) It will probably be contended that the case of Cosgriff v. Miller is authority for the admission of evidence on the question of value of hay fed to the cattle. An examination of the opinion in that case, however, discloses that the allegations of the petition were much broader than in the petition in this case.

Testimony was erroneously introduced over objection giving conversations had with the defendant. There was no evidence tending to show that the plaintiff A. L. Coleman owned any lands at the time his conversation with the defendant occurred. Necessarily the defendant could have had no reference to a trespass upon these lands by what he said to Coleman in 1906. The testimony of the

witness Chabot relative to a similar conversation with the defendant and including declarations of the defendant with reference to other trespasses should have been excluded. It was error to permit, the plaintiffs to prove the value of the pasturage for their cattle for the entire summer and season in which the trespass was alleged to have been committed. The plaintiffs had their cattle upon the lands in June and July prior to the trespass, and the evidence did not tend to show that the sheep were upon the lands during the entire season. It is to be presumed that some of the lands were depastured by the cattle of the plaintiffs; and yet the jury were permitted to estimate damages upon the theory that defendant had deprived the plaintiffs of the use of the pasturage during the entire season. The testimony to the effect that the lands are valuable for a sheep camp was clearly inadmissible. The evidence concerning the value of the sheep of defendant was probably introduced for the purpose of showing the financial worth of the defendant. While authorities can be found which sustain that kind of proof where exemplary damages are recoverable, we contend that it is not the proper method to prove how much a person is worth. Financial standing depends upon assets and liabilities. One might own considerable property, and yet he might be indebted or the property might be incumbered, so that the value of the property proven would in no sense prove what he was worth.

On cross-examination the defendant was compelled to testify as to the contents of an affidavit he had made with reference to his whereabouts at the time the summons was said to have been served upon him. To impeach the testimony of the defendant as to where he was about the time mentioned, the plaintiffs introduced a portion of his affidavit filed in support of objection to the jurisdiction of the court, and also the return made by the alleged special deputy sheriff upon the summons in the case. This was a novel way to impeach the defendant. An examination of the record will show that the deputy appointed himself.

The trial court admitted the return of the alleged officer which on its face showed it to be absolutely invalid, and also an alleged affidavit which was of no force for the purpose of impeaching the defendant. The evidence was clearly incompetent and prejudicial to the defendant.

In view of the fact that no special damages were pleaded an instruction requested by the defendant to strike all the evidence relative to special damages should have been given, and it was error to refuse it. Other instructions offered by the defendant were erroneously refused. One of them stated correctly the rule concerning agency. The court should have instructed the jury as requested by the defendant that the acts and declarations of the alleged employees of the defendant were not to be considered. The instruction requested by the defendant to withdraw from the jury the evidence given by the witness Hellmer with reference to the value of the land for grazing purposes in connection with the adjoining range should have been given. He testified that the premises in question used in connection with the adjoining range was worth from $1000 to $1200 for pasturage purposes from July 1st to September 1st, and on cross-examination testified that the lands in question were only worth from $300 to $400 for that time. By permitting the evidence as to value in connection with the adjoining range to remain in the record, it was no doubt considered by the jury in estimating the damages, and that was clearly prejudicial to the defendant.

The instruction that was given stating that all persons are bound to take notice of the stones and marks of the Government survey, and that the plaintiffs were not required to otherwise mark the boundaries of their lands was not based upon any evidence in the record. It was therefore improperly given. Instruction No. 6 assumes that the sheep of defendant were upon the lands in question and depastured the same. The court had no right to assume in an instruction any of the disputed facts. The court further instructed the jury by instruction No. 32 that if they found

from the evidence that the defendant, either by himself or his employees, in pursuance of their employment, drove or permitted to be driven upon the lands in question the sheep after Coleman had requested that it be not done, then the defendant was guilty of wilful trespass and was liable for the damages resulting therefrom, and that in assessing the damages the jury might consider the business in which the plaintiffs were engaged and the purpose for which the premises, pasturage and water were used by them, and the injury, if any, to their stock occasioned by such trespass. The instruction was erroneous for the reason that there was no evidence tending to show that the defendant himself drove any sheep upon the lands or that Coleman ever requested him not to do so, and for the further reason that it permitted the jury to consider evidence of special damage, when the petition had not alleged special damages. By instruction 14 the plaintiffs were permitted to recover damages which arose after the commencement of the suit. We do not contend that in a proper case such damages cannot be recovered. But in this case the only damages, if any, that arose after the suit was commenced were the damages in reference to the marketing of the cattle, the hay fed to them, and the expenses incurred in gathering them. As the testimony upon those matters should have been excluded, the giving of the instruction was for the same reason erroneous and prejudicial. In instruction No. 21 certain rules were stated for proving agency, and among other things that the jury might consider the conduct of the parties; and whether the acts have been ratified or the benefits thereof have been accepted or acquiesced in after knowledge of the facts. The instruction is objectionable because of the absence of any evidence tending to prove that the defendant had ratified the acts of any of his employees in taking sheep upon the premises in question, or that with knowledge of the facts he had received or accepted any benefits.

Instruction No. 11 in connection with instruction No. 22 was erroneous and prejudicial, for it permitted the jury

to find the defendant equally responsible if the act had been committed by his employee. Thus the plaintiffs might recover exemplary damages if the trespass was committed by the defendant's employees in the manner and under the circumstances set forth in instruction No. 11. This is not a case where exemplary damages can be awarded at all. But conceding for the sake of argument, that there may be sufficient evidence to authorize exemplary damages, the two instructions taken together laid down an incorrect rule, for unless the defendant himself committed the trespass in a wanton, malicious or reckless manner or participated with others in committing it in that manner, or authorized or directed another to commit it, he would not be liable for exemplary damages. (Warner v. S. Pac. 113 Cal. 105; Ry. Co. v. Prentice, 147 U. S. 110; Hagan v. R. R. Co., 3 R. I. 88.) There are cases announcing a different rule. But there is no question that the true rule is laid down in the cases cited.

The damages awarded by the jury are so excessive that if they had been based upon competent evidence the verdict could not stand. The lands upon which the trespass is alleged to have been committed consisted of 360 acres. For 200 acres thereof one of the plaintiffs was paying $11.20 per annum, under a lease from the state. This land was the same kind and character as the 160 acres upon which one of the Colemans had a homestead entry. Assuming that the pasturage was worth from $300 to $400, and that the defendant had depastured all the lands, and if the plaintiffs lost $10 a head on the 30 head shipped to market, the total amount of the damages for those items would not exceed $700. We do not, however, consider that any item of damage should be considered in any event except the value of the pasturage.

The verdict is contrary to law and not sustained by sufficient evidence. There is no evidence that the defendant directed any of his employees to take the sheep upon the lands in question. On the contrary he directed them not to

do so. He had plenty of land himself for grazing his sheep. Under such circumstances his employees would not be authorized to take sheep upon the lands of another, and if they did so they would not be acting within the scope of their employment. (Morris v. Brown, 111 N. Y. 318.)

*Metz, Sackett & Metz,* for defendants in error.

Reference to the record will disclose that all declarations of the defendant's agents or employees were excluded until ample evidence had been introduced, showing that such persons were agents and in the employ of the defendant and acting within the scope of their authority at the time. The court was not only particular to instruct the jury correctly upon the law of agency and the proof thereof, but made it necessary for the jury to find that the sheep which were grazed upon the premises of the plaintiffs belonged to the defendant before any verdict could be rendered against him. While the declarations of an alleged agent are not admissible to prove agency, if the agency be otherwise *prima facie* proven, they become admissible in corroboration. (31 Cyc. 1655.) When the fact of agency has been shown by other evidence then the acts and statements of the agent may be shown. And if the acts and statements have been admitted and the agency is then otherwise proven, the error will be cured. (Mechem on Agency, sec. 100; Bird v. Phillips, 115 Ia. 703; McCormick v. Roberts, 36 Kan. 552; R. R. Co. v. Henlein, 52 Ala. 606; Nowell v. Chipman, 170 Mass. 340; Kelly v. Benv. Ass'n., (Cal.) 84 Pac. 321; Mfg. Co. v. Redelsheimer, 28 Wash. 370; Mullen v. Quinlan, 195 N. Y. 109; Central &c Co. v. Thompson, 112 Pa. St. 118; Land &c. Co. v. Gillan, 49 S. C. 345; Jones v. Hess, 48 S. W. 46; McClung's Exr's. v. Spotswood, 19 Ala. 165; Iron Co. v. Baugh, 147 Ala. 613; R. R. Co. v. R. R. Co., 127 Ala. 137; Gibson v. Hdw. Co., 94 Ala. 346; Ham v. Brown, (Ga.) 58 S. E. 316; Singer &c. Co. v. Hutchison, 184 Ill. 169; Kelly v. Shumway, 51 Ill. App. 634; Harrington v. Keteltas, 92 N. Y. 40; Wanamaker v. Megraw, 48 App. Div. 54; Smith v. Heater Co., 19 N. Y. Supp. 285;

Smith v. Dodge, 3 N. Y. Supp. 866; Foster v. Ins. Co., (Ore.) 54 Pac. 811; Buist v. Merc. Co., (S. C.) 52 S. E. 789; Mfg. Co. v. Crossland, 2 Tex. Civ. App. 80; Gove v. Assur. Co., 119 Mich. 136; Christ v. Bank, (S. D.) 82 N. W. 89; Curtin v. Ingle, 137 Cal. 95; Hatch v. Squires, 11 Mich. 185; Hecht v. Ritchey, 66 Mo. 114; Francis v. Edwards, 77 N. C. 371; Galbreath v. Cole, 61 Ala. 139; Rowell v. Klein, 44 Ind. 291.)

The rule of liability of a principal for the acts of his agents was very clearly stated in the twentieth instruction. Throughout the instructions the court carefully limited the liability of the defendant to only those acts of his agents which were done within the scope of their authority and while in charge of the defendant's sheep. It is not to be presumed that the jury failed to follow the instructions in that respect. While there are some authorities to the contrary, we believe there should be no exception to the rule that the mere nature of the act is not the only criterion, but the most important test is whether the act was done in the course of the agent's employment. It does not follow that the principal is liable for any wilful or malicious act of his agent, but only for those acts which are committed by the agent while acting in the course of his employment and within the scope of his authority. If the agent, while engaged in doing something which he is authorized to do, and while in the execution of his authority, inflicts an injury upon third persons, though wilful or malicious, the principal is liable. (Mechem on Agency, secs. 740, 741.) A principal, whether a corporation or an individual, may be held liable in exemplary damages to a third person on account of a wrongful, wanton, or malicious act of his agent done within the scope of his agency although said act is not previously authorized nor subsequently ratified by the principal. (Rucker v. Smoke, 37 S. Car. 377, 34 Am. St. 758.) This view is well sustained by authority. (Story on Agency, sec 452; Reynolds v. Witte, 13 S. C. 18; Fell v. R. R. Co., 44 Fed. 248; R. R. Co. v. Herring, 57 Ill.

59; Transfer Co. v. Robinson, 12 Ky. L. Rep. 555; So.
Exp. Co. v. Brown, 67 Miss. 260; R. R. Co. v. Bailey, 40
Miss. 395; Canfield v. R. R. Co., 59 Mo. App. 354; Hazard
v. Israel, 2 Am. Dec. 338; R. R. Co. v. Garrett, 8 Lea,
438; 41 Am. Rep. 640; Lienkauf v. Morris, 66 Ala. 406;
Goddard v. R. Co., 57 Me. 202; Haley v. R. Co., 7 Baxt.
239; Taber v. R. Co., (S. C.) 62 S. E. 311; R. Co. v.
Roth, (Ky.) 114 S. W. 264; Aygarn v. Grain Co., 141 Ill.
App. 402; R. Co. v. Reed, 12 Ohio C. C. (N. S.) 177;
Reeves v. R. Co., (S. C.) 46 S. E. 543; R. Co. v. Mitchell,
(Miss.) 35 So. 339; Traction Co. v. Peterman, (Tex. Civ.
App.) 80 S. W. 535; 102 Mo. App. 597; Ry. Co. v.
Harris, 122 U. S. 597; Hopkins v. R. Co., 36 N. H. 9;
Ry. Co. v. Dunn, 19 O. St. 162; R. Co. v. Barger, 80 Md.
23; Brown v. Tel. Co., 82 S. C. 173; West v. U. T. Co.,
39 Kan. 93; St. Clair v. Pack. Co., 29 Mo. App. 76; Rose
v. R. Co., 106 N. C. 168; Hart v. R. Co., 33 S. C. 427;
Pursell v. R. Co., 108 N. C. 414; R. Co. v. Hill, 90 Ala. 71;
Kan. R. Co. v. Rice, 38 Kan. 398; Traction Co. v. Orbann,
119 Pa. 37; 1 Harris Damages by Corp., 9 and sec. 749;
Shearm & Redf. Neg. (4th Ed.) Sec 749.) The authorities
also sustain the doctrine that exemplary damages are liable
where a corporation is the defendant, and the employment
in the course of which the servant commits a tort is within
the scope of the corporate powers. We believe the princi-
ple to be the same as in the case of an individual. (Suther-
land on Damages, 790; Redf. Railways (3rd Ed.) 510;
Goddard v. R. Co., 57 Me. 202; Hanson v. R. Co., 62
Me. 84; R. Co. v. Young, 21 O. St. 518; R. Co. v. Dunn,
19 O. St. 162; Ramsden v. R. Co., 104 Mass. 117; Bank
v. Globe Works, 101 Mass. 57; Noyes v. R. Co., 27 Vt.
110; R. Co. v. Rogers, 38 Ind. 116; R. Co. v. Blocher,
27 Md. 277; Travers v. R. Co., 63 Mo. 421; Perkins v.
R. Co., 55 Mo. 201; Malecek v. R. Co., 57 Mo. 17; Hopkins
v. R. Co., 36 N. H. 9; Mfg. Co. v. Holdfoot, 86 Ill. 459; R.
Co. v. Dickson, 63 Ill. 151; R. Co. v. Hammer, 72 Ill. 353;
R. Co. v. Bailey, 40 Miss. 395; Quigley v. R. Co., 11

Nev. 364; Bowler v. Lane, 3 Met. (Ky.), 311; R. Co. v. Mahoney, 7 Bush, 235; Jacobs v. R. Co., 10 Bush, 263; 1 Harris, Dam. by Corp., sec. 250.)

Counsel for plaintiff in error contend that the defendant not only denied that he authorized the trespass, but that he directed his employees not to trespass on any of the lands of other parties, and also that the persons who did trespass on the lands in question were not his employees and that the sheep were not his. Under the court's instructions it became necessary for the jury to find that Henderson testified falsely in these matters in order to find for the plaintiff. The conclusion is irresistible that the jury did not believe the testimony of Henderson as to any of these matters, for if they did the verdict would have been in his favor. The cases cited by counsel for plaintiff in error as sustaining the rule contended for by them in their argument against the instructions relative to exemplary damages are not in accord with the books generally which have been written upon the subject, and do not agree with the weight of authority. But counsel did not request an instruction in accordance with their view of the law, and ought not now to be heard to complain of the instructions that were given upon the subject. (Bunce v. McMahon, 6 Wyo. 24; Cosgriff v. Miller, 10 Wyo. 90.) A judgment will not be reversed for the omission of the trial court to qualify instructions, unless the error is made positive and tangible by the refusal of special charges on the omitted points. (McKnight v. R. Co., 44 Minn. 141; Mullen v. Wilson, 44 Pa. 413; Simms v. R. Co., 3 S. E. 301; Shuman v. Johnson, 66 Tex. 70.) A defective charge cannot be considered on appeal unless the correct one was asked below by the complaining party. (Sutherland v. Shelton, 59 Tenn. 374; Knoxville v. Bells, 80 Tenn. 157; Cook v. Wooters, 42 Tex. 294; Ins. Co. v. Ice Co., 64 Tex. 578; Ins. Co. v. Tile Co., 43 N. E. 41; Hindman v. Tinne, 35 N. E. 1046; Mackie v. R. Co., 6 N. W. 723; Churchill v. Gronwig, 46 N. W. 1063; Shroeder v. Webster, 88 Ia. 627; Barton

v. Grey, 24 N. W. 638; 38 Pac. 344; 43 Pac. 893; 123
U. S. 710; 29 N. E. 929; 31 N. E. 74; 42 N. E. 328;
42 N. W. 587; 61 Mo. App. 581; 24 N. W. 691; 16
N. W. 439; 14 N. W. 407; 20 N. W. 860; 11 N. W. 60;
12 N. W. 468; 16 N. W. 603; 18 N. W. 326; 15 N. E.
532; 91 N. C. 236; 58 Pa. 371; 64 U. S. 172; 157 U. S. 72;
36 Pac. 925.)   Error cannot be predicated on the failure of
the court to give an instruction which was not requested. (27
U. S. 1; 75 U. S. 342; 33 Pac. 341; 9 Fla. 163; 91 Ind.
51; 69 Ia. 368; 77 Ia. 115; 32 Kan. 499; 21 S. W. 386;
20 S. W. 955; 60 N. W. 591; 72 Am. Dec. 672.)

The allegations of the petition were sufficient to author-
ize proof of special damages.  It is not essential that all
the injurious effects of the act which constitutes the cause
of action should have been developed and suffered before
suit.   Whether the continuing damages may be computed,
after the commencement of the suit, will depend upon
whether they proceed from the act complained of, or from
some later act constituting a fresh cause of action.  (1
Sutherland on Damages, 187, 194; Hayden v. Albee, 20
Minn. 159; Fliler v. R. Co., 49 N. Y. 42; Spear v. Tracy,
26 Vt. 61; Miller v. Wilson, 24 Pa. St. 114; Brew. Co. v.
Compton, 18 L. R. A. 390.)

POTTER, JUSTICE.

This action was brought by A. L. Coleman and George
A. Coleman against Fred Henderson to recover damages
for an alleged trespass upon 360 acres of land situated in
Big Horn County, in this state, and driving therefrom 250
head of cattle belonging to the plaintiffs as co-partners
and preventing such cattle from pasturing thereon.   There
was a jury trial, resulting in a verdict and judgment in
favor of the plaintiffs for $2,500.   The defendant has
brought the judgment here for review on error.   The right
of the plaintiffs to the possession of the land for the pur-
pose of pasturing and watering their cattle thereon is not
disputed upon the evidence, and therefore only those alle-

gations of the petition which are material upon the points in controversy will be referred to.

It is alleged that at the time of the alleged trespass the plaintiffs were pasturing 250 head of mixed cattle upon the land; that a valuable spring is situated thereon which furnishes an ample supply of water for said stock when ranging upon the land or in that vicinity, and the only available water for said stock within two miles of the land; that the plaintiffs had considerable improvements thereon for salting and caring for their said stock; that they were preparing said cattle for market in the fall of 1907, and that the cattle were of the best quality of mixed cattle for beef. It is further alleged that on or about July 16, 1907, the defendant, with knowledge of the facts aforesaid, wrongfully, wilfully, maliciously and unlawfully drove upon said land a large herd of sheep belonging to him, consisting of about 4,000 head, and kept, pastured and watered said sheep thereon until about September 1, 1907, completely destroying the pasturage and polluting the waters thereon; and that at the same time the defendant wrongfully, maliciously and unlawfully drove the cattle of plaintiffs from the land, and scattered them so that they wandered to different ranges in search of salt, water and feed; that the cattle were driven from the land and from their accustomed range in the vicinity with whip and dogs; and that in the manner aforesaid the defendant caused all the pasture and herbage on the land and vicinity to be eaten up and destroyed by said sheep, and the waters on the land to be polluted thereby, so that the stock of plaintiffs were prevented from obtaining feed or water on the land, or in the vicinity thereof, to the great injury and damage of the plaintiffs. It is alleged that the plaintiffs repeatedly protested against the said acts of the defendant, but that the defendant, notwithstanding such protests, continued to feed, water and salt his sheep on the said land, and to drive the stock of plaintiffs from their said range, and has threatened to continue to do so, and to prevent interference by the plaintiffs.

It is further alleged that the plaintiffs had no other suitable range or pasture for their said cattle and could obtain none, to the great injury and damage of said stock; and that "because of the defendant wrongfully destroying the pasture upon the said lands as aforesaid, and driving the said stock from their accustomed range, the said plaintiffs jointly as co-partners have been injured and damaged in the sum of $2,500, the said injury arising to the said 250 head of cattle owned jointly as co-partners by plaintiffs. That by reason of the wilfulness and maliciousness of said wrongful acts of the defendant, the said plaintiffs jointly as co-partners have been injured and damaged in the sum of $4,000." There is a prayer for judgment in the sum of $6,500. The answer was a general denial. That part of the allegation above quoted to the effect that the injury was caused to the cattle owned jointly by plaintiffs as co-partners was evidently inserted in the petition for the purpose of showing that the plaintiffs were not claiming in this action any damages on account of injury caused to other cattle which were mentioned in a previous paragraph of the petition as respectively belonging to the individual plaintiffs.

It appears that the land alleged to have been trespassed upon consists of two adjoining tracts, one being referred to in the evidence as the leased land, and which was shown to have been leased by George Coleman from the state, and the other as the George Coleman homestead; that a cabin and a spring were located upon the homestead tract; and that the premises were commonly known in the neighborhood as "Willow Springs." By the evidence on the part of the plaintiffs it was shown that at or about the time alleged a trespass was committed by driving upon the land and pasturing and watering thereon a large herd of sheep, thereby destroying the herbage and grasses thereon, causing the cattle of the plaintiffs to leave the premises and to scatter and wander to other ranges for feed and water; and there was evidence to the effect that some of the cattle had been driven from the premises by dogs which accom-

panied the sheep, and that some had been driven away from the water thereon by the sheep herder with a whip.

The point chiefly in controversy, aside from the question of damages, was whether the trespass had been committed by the defendant or by his sheep. He was not shown to have been on the land personally with the trespassing sheep, but his liability for the trespass was sought to be shown by proof that the sheep belonged to him, that they had been driven and grazed on the land by his directions, and that the men who had them in charge were in his employ. From the evidence introduced by the plaintiffs it appeared that a large herd of sheep, mostly yearlings, and, as variously estimated by the witnesses, consisting of from 2,600 to 4,000 head, in charge of a herder, was driven upon the land and a sheep camp established thereon, the camp being established on the homestead tract near the cabin and spring; that the camp remained there from July 15, 1907, until about July 27, and that until its removal the sheep were bedded on the premises in the neighborhood of the camp near the cabin and spring, and that until about the middle of August they were driven back and forth across the land, going to and returning from the water thereon, and were grazed and watered thereon, and that thereby the pasturage was entirely consumed and destroyed and the water polluted. The evidence not only tended to show that the sheep belonged to the defendant, and that those who had them in charge and located the camp on the land were in his employ either as herders or camp movers, but would be convincing on that question if accepted by the jury. The defendant denied that any sheep belonging to him were on the land by his directions or with his knowledge, and he testified that the four bands that he was grazing in that part of the country at the time were elsewhere than on the land in controversy, and that he knew where all his sheep were. The witnesses for the plaintiffs testified that a man giving his name as George Sherwin was the herder in immediate charge of the sheep, and the defendant testified that no such man was in his employ

at the time. The witnesses for plaintiffs also described the paint mark or "brand," as it is called in the evidence, that was noticed upon most of the trespassing sheep, and identified the same as a "brand" commonly used by defendant to indicate his ownership, but he denied that he used such brand to designate ownership, and that he had any herd of yearlings in that brand. The brand so identified is referred to generally in the testimony as the "dot brand." The defendant admitted that he occasionally used the brand to indicate sheep intended for shipment, on yearlings or ewes, or for "different purposes different times."

Several circumstances were related by the witnesses for plaintiffs tending to corroborate their testimony identifying the sheep and the brand aforesaid as belonging to the defendant, and to show that Sherwin and the camp movers were in the defendant's employ. The evidence is voluminous so that it will be impracticable to state the same except in a general way. It was shown that on different occasions men known to be employed by defendant in connection with the grazing of his sheep had taken sheep marked with the dot brand, the same brand that was noticed on the trespassing sheep, from the herds of other parties into which they had strayed, claiming such sheep for the defendant, and that some of the sheep so taken were put into the herd then trespassing on the Coleman land. It was further shown that on one occasion the defendant himself had taken and claimed about two hundred head of sheep having the same mark upon them from a herd of another party. And one witness testified that the defendant had told him that sheep branded with the dot brand as used upon the sheep in question were his sheep. A different mark, referred to as the 7K brand, was also identified as the sheep brand of defendant, and he admitted it to be his brand and used by him to designate ownership of sheep; and it was shown that on one occasion, when sheep belonging to several parties had become mixed, including a number marked 7K, the sheep so marked were taken and placed in the trespassing herd then on the premi-

ses in controversy, by men in the defendant's employ, and who were mentioned in the testimony as having had something to do with locating the sheep camp on said premises and keeping the camp and the sheep there. There was abundant evidence to the effect that two men, named Zimmerman and Heard, respectively, were at the time in the employ of the defendant as camp movers, whose duties included the locating and moving of the camps for the herding and grazing of the defendant's sheep, and keeping such camps supplied with provisions; and one witness testified that Zimmerman moved the camp upon the land in controversy, and that Heard moved it away, and Heard was seen by another witness in that immediate neighborhood during the trespass, and upon being asked who the sheep on the Coleman land belonged to he replied that they were Henderson's. There was also shown a conversation between Zimmerman and A. L. Coleman, on July 26, when they met on the road near the premises as Coleman was returning therefrom, having on that occasion for the third time ordered the herder to move the sheep off the land. Coleman testified that Zimmerman said that he knew the sheep were on his (Coleman's) land, and that "the sheep Henderson has is worth more than all the cattle in Big Horn Basin;" and that in reply to the question when he was going to move the camp, he said, "I am going to move it now." Henderson admitted in his testimony that both Zimmerman and Heard had been in his employ as sheep herders in the summer of 1907, but he testified that for a week or ten days early in July Zimmerman was away, and when he returned did not go to herding again until August 6th. He also testified that Heard moved camp some and then went to herding. Both Zimmerman and Heard were seen by some of the witnesses at what is referred to as the headquarters camp of the defendant when the latter was present, and, as testified, the parties appeared to be employed there; and one witness testified that he was present when a settlement for past work occurred between Zimmerman and Henderson. Whatever conflict there

is in the testimony as to the kind of duties performed by
Zimmerman and Heard was a matter for the jury to deter-
mine.    The witness, Hellmer, testified that during the
continuance of the trespass he had a conversation with
Zimmerman about it, and that the latter said that he was
not going to move the sheep, that Henderson told him
to put them there (on the Coleman land), and that he
would not move them away until Henderson came back;
that conversation occurring in the neighborhood of the
land a short distance therefrom, the witness having seen
the sheep there.    There was also evidence of statements
made by the herder, Sherwin, which will be referred to in
discussing the admissibility of the statements.

It appeared that the defendant had a camp on or near
some land owned by him on Canon creek, called the Wheel-
right place, situated about two miles from the land in con-
troversy; and it is referred to in the testimony of the
plaintiffs' witnesses as the headquarters of the defendant
when he was in that section; but he testified that his head-
quarters were not there more than any where else.    It
appeared, however, that during July and August, 1907, he
was there at intervals, and several conversations with him
there were testified to in which he is said to have expressed
his intention prior to the trespass to graze his sheep on the
land in question, and afterwards admitted that the tres-
passing sheep were his and that he had told his men to
take them there.    The testimony relating some of these
conversations will be mentioned as we proceed with the
discussion of the various points presented upon the record.
At this time we take occasion to refer only to a conversation
between the defendant and the witness, Litgard.    The latter
testified that he had a tract of land separated from the
land in question by another quarter section, and that before
the sheep were taken on the land in question, and when
going in that direction, they were at a water hole which
he thought was on his land, the sheep then being in the
charge of Sherwin, and he went to the defendant's camp
to see him about it; that the latter spoke of the sheep as

belonging to him and said that he had given directions not to run them upon the land of the witness; and at a later time, as we understand it, that the defendant pointed toward Willow Springs and said to the witness that he had a camp over there.

1. The statements of Sherwin were admitted over objections on the part of defendant. Some of them appear to have been made when he was told that he was on the Coleman land or was ordered to move off. Those statements were in substance that the sheep were Fred Henderson's; that he was in Henderson's employ; that he had been moved upon the land by Zimmerman, the camp mover; that he said to A. L. Coleman when first ordered to vacate the premises that he would go and see Zimmerman and move off, and that on the next day he said to Coleman that Zimmerman told him to stay there, and therefore he could not leave but had to stay with the sheep; and at a later date he said to Coleman that he was there and would not go until he got ready. Such statements were shown to have been made when the party making them had the sheep in his charge upon the land in controversy, and they related to and explained his acts in driving the sheep upon the land and keeping them there. Other statements shown by the testimony to have been made by him immediately before taking the sheep upon this land and when he was driving them in that direction were also admitted, to the effect that he had been directed to take the sheep to Willow Springs; that he could run the sheep any way he had a mind to get there; and was told by Henderson to let the sheep feed where they pleased. The admission of the above statements was objected to not only on the ground that they were incompetent, irrelevant and immaterial, but on the specific ground that the acts and declarations of the party making them could not bind the defendant until it was first shown that it was a matter in line with his authority and while acting for the defendant.

When proof of those statements was first offered the same was excluded upon a similar objection to that above

noted, and the proof was not admitted, as the record dis-
closes, until considerable other evidence had been introduced
tending to show that the sheep were Henderson's, and that
the herder, Sherwin, was in his employ; including the evi-
dence above alluded to identifying the paint mark upon the
sheep as one belonging to and used by Henderson, and his
admissions that they were his sheep, and that they had
been driven on the land by his direction. It is impracticable
without unreasonably extending this opinion to refer to all
.the evidence on that subject. It was sufficient, in our opinion,
to justify the court in admitting the proof on the theory
that the agency of the one making the statements had been
shown at least *prima facie* by independent evidence, and there
can be no doubt that the court took that view of the matter
and admitted the statements as made by one who might
reasonably be found by the jury upon the other evidence
to have been acting for the defendant and within the scope
of his authority, for at the conclusion of all the. evidence
the court, among other instructions, gave to the jury the
following: "You are instructed that before the declara-
tions of any of the persons mentioned in plaintiff's evidence
can be binding upon the defendant in this action, it must
be proven by the plaintiffs by a fair preponderance of the
evidence that the persons mentioned were at the time of the
making of the declarations in the employ of the defendant,
Henderson, .and were at the time acting within the line
of their authority, and while in charge of the defendant's
sheep."

Declarations of an agent when made in the course of, and
accompanying the transaction which is the subject of in-
quiry, and acting within the scope and limits of his author-
ity, do not come within the general rule excluding hearsay
evidence, for the reason that such declarations as well as
the acts of the agent under such circumstances are con-
sidered and treated as the declarations of his principal.
(Franklin Bank v. Navigation Co., 11 Gill & Johnson, 28,
33 Am. Dec. 687.) In the case cited the rule upon the
subject is clearly expressed as follows: "Whatever is

said by an agent, either in the making a contract for his principal, or at the time, and accompanying the performance of any act within the scope of his authority, having relation to, and connected with, and in the course of the particular contract or transaction in which he is then engaged, is, in legal effect, said by his principal, and admissible in evidence; not merely because it is the declaration or admission of an agent; but on the ground, that being made at the time of, and accompanying the contract or transaction, it is treated as the declaration or admission of the principal, constituting a part of the *res gestae,* a part of the contract or transaction, and as binding upon him as if in fact made by himself. But declarations or admissions by an agent, of his own authority, and not accompanying the making of a contract, or the doing of an act, in behalf of his principal, nor made at the time he is engaged in the transaction to which they refer, are not binding upon his principal, not being part of the *res gestae,* and are not admissible in evidence; but come within the general rule of law excluding hearsay evidence; being but an account or statement by an agent of what has passed or been done or omitted to be done—not a part of the transaction, but only statements or admissions respecting it."

The declarations of an alleged agent are of course not admissible unless there is other evidence of the agency, for the fact of agency cannot be established by evidence alone of such declarations. But it is held that if the agency is sufficiently proved after the declarations have been admitted, the error of their admission in the first instance is cured. And such declarations may be received provisionally as verbal acts indicating that he was acting on another's behalf, not his own, leaving it to subsequent proof to establish his connection as agent with the party sought to be charged. (2 Wigmore on Ev., Sec. 1078; Nowell v. Chipman, 170 Mass. 340; Clough v. Light & Power Co. (N. H.), 71 Atl. 223.)

In the case at bar the fact of the agency, and the nature and extent of the agent's authority were questions for the

jury to determine under proper instructions. Under such circumstances any evidence tending to prove the agency is admissible, for it is the province of the jury to pass upon it; and "if evidence has first been introduced tending to prove the agency or to make out a *prima facie* case thereof, the admissions and declarations of the alleged agent may then be shown and the whole case passed upon by the jury." (Mechem on Agency, Sec. 106.) It was not for the trial court to say, when proof of the statements was offered, whether upon the evidence it had been fully and satisfactorily shown that the person making them was in defendant's employ and was his agent or not; that was a question to be submitted to the jury, and if they should find from the competent evidence on that subject that the party was defendant's agent, and that the statements were made in the line of his authority; and if it appeared that the statements were made while the agent was acting for defendant in relation to the matter under consideration, the plaintiffs were entitled to have such statements go to the jury with the other evidence in the case.

The defendant not only testified that in 1907 he did not have anyone in his employ by the name of Sherwin, and that no sheep belonging to him were upon the land in controversy by his direction or authority or with his knowledge, but he introduced testimony to show that a herd of sheep owned by another party, in charge of one Jensen, were upon that land for three days, and that they were the sheep that had been ordered off the premises by A. L. Coleman. The latter, in rebuttal, testified that the sheep so referred to in defendant's evidence were not on the lands in controversy, but that about that time he saw the party referred to as Jensen on another tract of land which he claimed, and that he informed Jensen of his claim to the land, whereupon the latter remarked that he would move off. That whole matter was a question for the jury. The statements shown to have been made by the party referred to as Sherwin appear to have been made under such circumstances if he was found to have been acting

for defendant as to render them admissible. We think the evidence was properly admitted. The instruction above quoted fully protected the rights of defendant in the matter. There was ample evidence justifying a finding by the jury that both defendant and Zimmerman were well acquainted with the land and knew that it was claimed by the plaintiffs.

In Kentucky Stave Co. v. Page (Ky.), 125 S. W. 170, an action on behalf of infant heirs to recover damages for the wrongful cutting and conversion of timber, the court say: "Evidence was admitted as to statements in the nature of admissions, as well as directions of one Price, appellant's foreman. Some of these statements were made when he was on the land, or elsewhere in the actual business of getting out the timber. These were admissible as part of the *res gestae*. They tended to show that the timber was being cut by appellant, and not by Geo. Page. The other statements, made at other times than when Price was engaged in this work, were statements to him or by him showing his knowledge of the condition of the title in the infants, and the lack of authority of their father to sell the timber. It was necessary that appellant or its agent in authority have knowledge of the situation in order to hold them for punitive damages—a relevant inquiry under the pleadings."

2. It is contended that it was error to admit in evidence the statements and acts of Zimmerman and Heard. We have not attempted to state all the declarations of those parties that were permitted to be shown, and do not think it necessary to do so. Some of the acts related to taking the sheep upon the land in question, and to establishing the camp thereon and moving it away, and it was shown that one or the other or both had placed other sheep marked with the dot brand and also some marked 7K in the trespassing herd during the continuance of the trespass. So far as the evidence of their acts and statements is concerned, to which exception was taken on the trial, we think it necessary only to say that at the time the proof thereof

was offered and admitted, there had been sufficient independent proof of their agency, the nature of their duties, and their control at the time of the sheep in question, to render the evidence admissible under the rule above discussed. And the statements properly excepted to appear to have been made while the trespass was being committed.

3. Evidence was admitted, over objection, showing that in the latter part of June, 1907, the plaintiffs had turned 250 head of cattle belonging to them upon the land in question, to be kept and pastured thereon and in the immediate vicinity until September, when it was intended to ship them to market as beef cattle; and that, as a direct result of the trespass the cattle suffered an average loss in weight of about 200 pounds, causing a depreciation in value in the fall of about ten dollars per head. As we understand the evidence introduced by the plaintiffs on this point, its effect is to show not only that the cattle actually lost weight, for it is testified that they were in good condiion before and in poor condition after the trespass, but also that they failed to gain in weight as they would have done, had they not been prevented by the alleged tortious acts from pasturing upon the land. In this connection it was shown that the pasture on the land in question was sufficient for the cattle until the shipping season; that the watering facilities were convenient and ample; that the plaintiffs had placed salt in boxes near the spring for the use of the cattle; that the feed was poor and the water limited upon the other ranges to which the cattle had been compelled to wander; and that the loss in weight and depreciation in value would naturally follow from their being driven from the land, deprived of the pasture, water and salt thereon, and caused to wander as they did. It was also shown that the plaintiffs shipped thirty head of the cattle, after recovering them, and that on account of their poor condition, caused by the acts complained of, they went upon the market as feeders instead of beef cattle, at a loss of about ten dollars per head on most of them and about six dollars on the others; and

that the remainder were not shipped because they were not in good condition for the market. It is contended that this evidence was not admissible for the reason that its only effect was to prove special damages and that no such damages had been pleaded. In the instructions the consideration of damages for loss of pasturage was limited to the pasturage on the lands in question, and the jury were expressly instructed that they could not consider the damages, if any, sustained by the plaintiffs by being deprived of the use of the pasturage on the adjoining range.

The proof above outlined was proper should the allegations of the petition be found sufficient to justify its admission, for if the plaintiffs were in a position under the pleadings to show the damage caused by their having been deprived of the use of the land and the pasturage and water thereon for their said cattle, and of the other provision that had been there made for their care, they were entitled to show what the actual damages were, so far as they could be shown with reasonable certainty and to have been the direct result of the alleged tortious acts. And under those circumstances damages caused by the loss in weight of the cattle, or their failure to increase in weight as it might be reasonably expected they would have done, had they been allowed to remain and pasture upon the premises, were recoverable. (Hoge v. Norton, 22 Kan. 374; Enlow v. Hawkins (Kan.), 81 Pac. 189.) Hoge v. Norton, *supra,* was an action upon an attachment bond. The property that had been attached was a herd of cattle, and one of the items of damage allowed was the loss in the growth of the cattle, caused by the fact that they had been taken from the range where they had been kept, and placed in charge of a herder on another range; and it appeared that by reason of such change, and the inferiority of the new range, both in grass and water, the cattle failed to increase in weight as they otherwise would. We quote from the opinion, which was delivered by Judge Brewer, the following: "Now, it appears from the testimony that cattle kept through the winter as these cattle were, do not

ordinarily during such time increase any in weight, but are in good condition for summer feeding, and if kept where they are wanted, and free from worry, and where grass and water are abundant and good, will, during the summer months, gain in weight about a certain amount; that during the time when the increase in weight is expected, these cattle were driven away to a new range, exposed to worry, and where both water and grass were limited and inferior; and at the end of their detention they were returned to the owner, not, it is true, deteriorated in value or lessened in weight, but without having made the ordinary increase in weight and value. It is a case of gain prevented, rather than of loss sustained, and the questions are, whether such gain prevented is proximate and certain—*i. e.*, directly the result of the removal and inferior care—and the amount thereof susceptible of reasonably certain measurement. Both these questions the jury, by their verdict, answered in the affirmative, and we cannot say that the testimony did not fully warrant the answers. Of course, absolute certainty is not attainable, as in casting up the figures of an account; but nevertheless there are certain laws of feeding and growth, well understood among cattlemen, and whose results work out with sufficient certainty for business calculations and judicial investigations. The raising of cattle for market has been an extensive and ofttimes profitable business in this state; and it would be strange if one could wrongfully take from the owner a herd of cattle, remove them to a poorer range, feed them on inferior food, and so treat them that during the growing season they do not grow at all, and then at its end return them, saying, as did the unfaithful servant in the parable, who returned the single talent without increase, "Lo! there thou hast that is thine," and still be under no liability to respond in damages to such owner. We do not think the law so deficient. It seems clear that the owner is damaged, that the damages may be determined to a reasonable certainty, and that the wrongdoer is bound to make good the damages."

In Enlow v. ·Hawkins, damages were·claimed for the malicious destruction ·of corn that had been purchased in September. from the defendant by the plaintiff, to be cut and shocked upon the land where it was grown, there to remain until the following April. The corn was alleged to have been purchased for winter feeding certain cattle. Damages were awarded for a shrinkage in the· weight of the cattle, it having been shown that the plaintiff was unable to secure the same kind of feed in the same section of the country during the season in which the plaintiff had expected to use the corn that had been destroyed. · The court held that the testimony was competent showing what the shrinkage in the weight of the cattle and the loss occasioned by a change of feed had been, and say: "The loss was the direct and immediate consequence of his (defendant's) tortious act, and one which he could have reasonably anticipated." And, referring to the case of Hoge v. Norton, the court say: "There the cattle were wrongfully taken from their accustomed feed, and here the accustomed feed was wrongfully taken from the cattle. In that case there was only a retarding of the growth of the cattle, while in the present case there was in addition to a checking of growth, an actual shrinkage in weight. In either case the loss was the natural consequence of. the tortious acts, and men who have experience in raising and feeding cattle can determine the resulting loss with reasonable certainty."

Damages are either general or special. As generally and briefly defined general damages are those which necessarily and by implication of law result from the wrong complained of, and special damages are those that are the natural but not the necessary result of such wrong. The former may be shown under a general allegation of damages; for the defendant is presumed to be aware of the necessary consequences of his conduct, and therefore cannot. be taken by surprise in the proof thereof. Special damages, on the other hand, though the natural result of the act complained of, are not the necessary result of that act, and are therefore not implied by law; and to prevent surprise to the

defendant they must be particularly specified in the petition, to permit evidence thereof upon the trial. (1 Chitty's Pl., 16th Am. Ed. 411; 2 Greenleaf's Ev., Sec. 254; Dumont v. Smith, 4 Denio, 319; Brown v. Railroad, 99 Mo. 310; Louisville & N. R. Co. v. Roney (Ky.), 108 S. W. 343.) In Brown v. Railroad, *supra*, the principle is expressed as follows: "General damages are such as the law implies or presumes to have occurred from the wrong complained of, and they need not be pleaded. In such case the wrong itself fixes the right of action. Special damages are such as really took place, and are not implied by law. They are either superadded to general damages from an act injurious in itself, or are such as arise from an act not actionable in itself, but injurious only in its consequences. Special damages must be stated in the petition with a reasonable degree of particularity, and it must appear that the damages are the natural, though not necessary, consequence of the wrong."

The allegations of the petition with reference to the cattle that plaintiffs were pasturing on the land show an intention to lay the foundation for the recovery of damages beyond the mere value of the pasturage consumed and destroyed. Those allegations are stated in substance in the forepart of this opinion. They could not have been reasonably understood by the defendant as importing anything less than that damages would be claimed for the injury to the cattle caused by forcing or driving them from the premises and depriving them of the feed, water and salt thereon; and for that purpose, and as a foundation for the proof aforesaid, they are, we think, sufficient. (Chandler v. Allison, 10 Mich. 460; Krejci v. Ry. Co., 117 Ia. 344; Miller v. Benoit, 51 N. Y. Suppl. 368, 164 N. Y. 590; Comstock v. Conn. R. & L. Co., 77 Conn. 65; 13 Cyc. 179.) If a more specific statement of the injury to the cattle was desired, a motion to have the petition made more definite and certain should have been filed; we do not, however, decide whether it would have been error to deny such a motion if it had been made, for that question is not here.

It is argued that the petition does not allege that the plaintiffs intended to market the cattle in the fall, nor what damage resulted from their inability to place them on the market at that time. The proof was not of damages, if any, suffered by plaintiffs by being prevented from marketing the cattle, but of the damages resulting from the difference in their condition and value caused by the alleged wrongful acts; and the evidence as to what was intended and done as to marketing the cattle was relevant for the purpose of showing the immediate effect of their depreciated condition and value, and that the plaintiffs were actually damaged thereby; and was rendered competent, if it would not otherwise have been so, by the averment in the petition that the cattle were being prepared "for market for the fall of 1907, which said cattle were of the best quality of mixed cattle for beef."

4. The admission of evidence showing that after the trespass, and as a result thereof, the plaintiffs were compelled to feed hay to some of the cattle because of their exceptionally poor condition, is here excepted to. But the evidence appears to have been received without a proper objection calling for a ruling as to its admissibility. We find in the record of the testimony an objection to the following question propounded to the witness, A. L. Coleman: "State what, if any, damage you and George Coleman have sustained as a direct result of this trespass of Henderson's sheep upon these lands and the eating up of the grass and the driving and dogging the cattle." The question was objected to as incompetent, irrelevant and immaterial, and as seeking to prove special damages, when no such damages had been alleged. The question does not seem to us to have been objectionable, upon the grounds stated. It conveys no intention that the answer would disclose an expense incurred for feeding hay, and it cannot therefore be said that the court made a ruling upon the objection allowing proof of such expense. In answering the question, the witness mentioned several items of damages, including the depreciation in the value of the cattle,

and stated that they had sustained a damage of $600 for
one hundred tons of hay fed to these cattle more than
would have been necessary had the trespass not occurred.
No motion was made to strike out that statement or any
other part of the answer, nor was any motion made during
the taking of the evidence to strike out the evidence as to
the expense incurred for feeding hay; though the witness
was cross-examined on the subject. Other witnesses testi-
fied as to the value of hay, and without objection, except in
one instance, when the witness Smith was asked what hay
was worth per ton, the question was objected to as in-
competent, irrelevant and immaterial. But the other testi-
mony on the subject was left in the case without objection,
except as above stated.

An objection to a proper question does not reach an
improper answer. Where the question is not objectionable,
but the answer is incompetent or irrelevant, an objection
should be made to the answer, in order to obtain a ruling
upon its admissibility; and the proper practice in such case
is to move to strike out the answer, or such part thereof
as is deemed to be incompetent or irrelevant. (1 Wigmore
on Ev., Sec. 18; 2 Elliott on Ev., Secs. 832, 884; Gould
v. Day, 94 U. S. 405; Yoder v. Reynolds (Mont.), 72 Pac.
417; Bigelow v. Sickles, 80 Wis. 98; Jones v. State, 118
Ind. 39.) In Gould v. Day, *supra,* the court say: "The
question was there objected to, not the answer. The
question only inquired as to the witness's ability to judge
from an existing fact what a previous fact might have been
and in itself was unobjectionable. If his answer went be-
yond the question, it was to that the objection of counsel
should have been directed, by a motion to exclude it as
not responsive, or otherwise improper, or as incompetent
testimony." In the Wisconsin case cited, the court say
as to a contention that certain incompetent testimony had
been received: "But this was not the error of the court. The
court ruled correctly. * * * But the defendant's counsel
omitted to obtain a ruling of the court upon the answer.
The court ruled upon the question correctly, by suggesting

a proper one. That was excepted to, but it was no error. We think that the conditions were such as to impose upon the defendant's counsel the duty to ask the court to strike out the answer, and, if that motion had been denied, it would have been an error of which they might have cause to complain."

After the evidence had been closed and the case was ready to be submitted to the jury, the defendant requested an instruction excluding from the consideration of the jury all evidence introduced by the plaintiffs relative to the feeding of hay to their cattle, and the value thereof. The instruction was refused. Under the circumstances above stated it was not error to refuse the instruction. According to the clear weight of authority, a party who has permitted incompetent or irrelevant evidence to be received without a seasonable objection is not entitled as of right to an instruction withdrawing it from the consideration of the jury. (1 Blashfield on Instr., Sec. 208; 11 Ency. Pl. & Pr. 310; Becker v. Becker, 45 Ia. 239; Quin v. Lloyd, 41 N. Y. 349; Bank v. Ins. Co. (Or.), 52 Pac. 1055; State v. Mc-Daniel (Or.), 65 Pac. 520.) The reasons upon which this rule is based are so well stated by Mr. Justice Wolverton in Bank v. Ins. Co., *supra,* that we quote from the opinion in that case: "One is that a party will not be permitted to lie by when a witness is called against him, and speculate upon the chances, and, when he finds the testimony to be unsatisfactory or has received and used it to himself, to ask for its withdrawal. He thus makes a law unto himself, and must abide by it. The other, by not insisting upon the rejection of the objectionable testimony, the opposing party might have been misled into a reliance upon it, whereas he might otherwise have produced other and better evidence in support of his case." Of course, it is only necessary that the evidence be objected to when its objectionable nature first becomes apparent, as where that is disclosed for the first time upon cross-examination.

5. The plaintiffs were permitted over objection to show that it had cost them one hundred and fifty dollars to gather

the cattle. This we think was error. It is true that it is alleged that the defendant wrongfully, unlawfully and maliciously scattered the stock of the plaintiffs, so that they wandered to different ranges in search of salt, feed and water, and drove them from their accustomed range with whip and dogs, to the great injury and damage of the plaintiffs; and the driving of the stock from their accustomed range is alleged as one of the acts causing the plaintiffs' actual damage in the sum of $2,500. But it is not alleged that the plaintiffs were put to any trouble or expense in gathering the cattle, and the allegations with reference to damages seem to relate particularly to the injury to the cattle. It is argued by counsel for the defendants in error, plaintiffs below, that the most natural and direct damage flowing from the scattering of the cattle would be the expense of gathering them. It may be conceded that the expense would be the direct and natural result of the alleged wrongful acts, but it cannot reasonably be said, we think, that such expense is implied by law as not only the natural but the necessary result of those acts, and therefore, it is a matter required to be specially pleaded; and, though it might be included in the most general way in the allegations as to damage, we are of the opinion that to authorize evidence of an expense so incurred, there should be an averment indicating more clearly that it would be claimed, than is done by a general statement that plaintiffs were damaged by the driving of the cattle from the premises or their accustomed range, especially where, as here, particular reference is made only to the injury to the cattle.

6. It is contended that error was committed in admitting in evidence the testimony of A. L. Coleman relating a conversation with the defendant in 1906, in which the latter said that he could graze upon any man's land if a patent from the government had not been obtained, and asked the witness what he would do in case he (defendant) should move on "our" (plaintiffs') land, and that defendant said that he (the witness) could not afford to sue him,

that he could not collect damages enough to pay attorneys and costs. It is also contended that a conversation as related by the witness Chabot was erroneously admitted. Chabot testified that he had a conversation with the defendant on July 5, 1907, as follows: "I advised him not to go on Willow Springs. I told him you cannot go on Willow Springs without going on George Coleman's or cattlemen or some body. I told him I seen plats at Buffalo land office. I told him the land had been taken. He told me I can cross Young Brothers' land; I can cross Hibbard; I can cross you; I can cross all of the cattlemen. As far as Coleman is concerned, I saw Coleman one day and asked Coleman what he would do if I put my sheep on his land. Coleman told him, Henderson, if you put your sheep on my land I will have to sue you for damages. Mr. Henderson then told me he made fun of Coleman; that he laughed at Coleman, and told Coleman, Mr. Coleman, you never sue me for damages because the damage you could collect would not pay the expenses and trouble you would have if you brought suit against me." The question that asked for this conversation was objected to as immaterial and irrelevant and a motion was made to strike out the first sentence as not responsive, and all relating to what Henderson said about other ranches and other people as incompetent, irrelevant and immaterial.

It is argued in support of the exception to this evidence that there was nothing to show that the witness Coleman had any land or interest therein in 1906, and that the defendant could not then have had reference to a trespass on the lands in question, for which reason the testimony was improper, and that it was also improper to permit the witness Chabot to testify to declarations of the defendant relative to other trespasses. As to the conversation related by Coleman, there was no motion to strike out his answer; and the question was to state what the defendant had said with reference to his intention in the matter of pasturing his sheep upon the lands in controversy. Clearly a competent and relevant question. But we perceive nothing

objectionable in the testimony as to these conversations with the defendant. The one testified to by the witness Chabot occurred, as he stated, July 5, 1907, only a short time before the trespass complained of, and was relevant upon the chief point in controversy, *viz.*: whether the trespass had been committed by the defendant's sheep, and by men in his employ, and with his knowledge. It was also relevant upon the question of damages, as tending to show the defendant's state of mind with reference to grazing upon land of other parties. Chabot had previously related a part of this same conversation without objection, at that time stating: "I went to the camp to see him myself, and he asked me if the cattlemen were going to allow the sheepmen at Willow Springs. I said, no, sir. He told me he was going to put his sheep there and graze that land. I said that is George Coleman's homestead." The same witness testified as follows about a conversation with the defendant in August: "He told me Coleman sued him. He said they were my sheep and I told my men to go there, but he can do nothing to me." Though not denying having conversations with these witnesses at or about the time stated, the defendant denied making the statements testified to.

7. Error is assigned upon the admission of testimony as to the value of the pasture on the land in question for the 250 head of cattle for the summer or season of 1907. The question calling for that value as propounded to the witness Coleman was objected to as incompetent, irrelevant and immaterial for the reason that the pleading shows the pasture to have belonged to the firm and to an individual, and that special damages were not pleaded. A similar question propounded to the witness Smith was objected to as incompetent, irrelevant and immaterial, not having the proper measure of damages. The witness Hellmer was permitted to testify as to such value without objection. It is here argued that the admission of the testimony was erroneous and prejudicial for the reason that it appears that the plaintiffs had cattle on the lands in June and July, 1907; that from the latter part of June until the middle of

July there were about 650 head of cattle on the premises; and that defendant's sheep were not there the entire season. That there were other cattle on the lands prior to the trespass was brought out on cross-examination, and could not, therefore, have affected the competency or relevancy of the questions; and the effect thereof, so far as the 250 head here involved were concerned, was gone into quite thoroughly in the examination of the witnesses; so that the jury had the facts before them, for the purpose of determining the value of the pasturage to which the plaintiffs were entitled as co-partners. The witness Coleman stated that the value of the pasture was $300, and the same value was testified to by other witnesses, whether asked as to the value for the 250 cattle or merely as to its value for pasturing cattle. There was some testimony giving a higher valuation. The purpose of confining the questions to the value of the pasture for 250 head of cattle seems to have been to show the damage suffered by the plaintiffs as co-partners so far as they had been deprived of the use of the pasture for their cattle, since in that respect they had by the petition so limited their right to recover; and it was proper to show the extent of the damage to their interest in the pasture. (Gilland v. U. P. Ry. Co., 6 Wyo. 185.) The evidence on the part of plaintiffs tended to show that the sheep had completely consumed the pasture remaining on the land, and, therefore, the fact that the sheep were there only part of the time would not interfere with the right to show the value of the pasture for the season. The question as to the value of the pasturage destroyed was fairly presented upon the evidence, and we find no error in that respect.

8. It is contended further that the court erred in admitting evidence concerning the value of the lands in question for a sheep camp, and the value of defendant's sheep. The only testimony called to our attention by the briefs, and all that we have noticed, relating to the value of the premises for a sheep camp is that of one witness who testified that it was a good sheep camp, in answer to a question as to the character of the land and spring with reference to its being a good

location for a sheep camp. Except possibly that it might tend to show the inducement or motive in establishing the camp that was shown by the evidence to have been located on the premises during a part of the time that the sheep were pastured thereon, we fail to see the relevancy of such evidence. But in any event it is not perceived how the error; if any, in admitting that evidence could have been harmful or prejudicial. The evidence as to the value of defendant's sheep was doubtless introduced to show the financial condition of the defendant, as bearing upon the question of exemplary damages. It was held in Cosgriff v. Miller, 10 Wyo. 190, that where ememplary damages are claimed, it is proper to inquire into the financial condition of the defendant. It may be conceded that evidence of the value of a defendant's property, standing alone, will not establish his worth, for the property may be incumbered, and the party may be otherwise indebted. But it was clearly relevant upon the question. Evidence may be relevant and admissible as such, though not sufficient in itself to establish the fact to which it relates. "A relevant fact will not be rejected because not sufficient in itself to establish the whole or any definite portion of a party's contention." (16 Cyc., 1116.) "It need not of itself be sufficient to establish the issue, for the question of its relevancy is a different question from that of its sufficiency alone to support the verdict:" (1 Elloitt on Ev. sec. 149.)

9. The defendant was cross-examined at length with reference to his whereabouts during the period of the trespass. He had testified that he was in that section of the country a part of the time in July and during the month of August, leaving there about the 20th of August, and that his several herds of sheep were grazing in specified localities; that testimony tending to show that neither of the herds was on the land in question. On cross-examination, he testified at first that he was in that part of the country continuously, as near as he remembered, from the last of July until the middle of August; and he was asked if he had not filed an affidavit in this case stating that he was

not there at that time. An objection to the question was overruled, and he answered: "No, sir; not in this case. I didn't say I was there continuously." His attention was then called to an affidavit appearing to be signed by him and to have been filed in the case in support of an objection to the jurisdiction of the court, and in reply to a question as to the signature, he admitted that he had signed the affidavit, and he also admitted that therein he had sworn that he was in Natrona county on the 9th day of August, the alleged date of service of the summons in the case. Following that, he was again asked if he was in the section of the country aforesaid during the first two weeks in August, and he answered that he was, and he stated in answer to subsequent questions that his affidavit was not false; that "Natrona county is right close." The defendant's counsel moved to strike out the answer to the question relating to the contents of the affidavit, on the ground that the paper itself was the best evidence, and the motion was denied. In rebuttal, the plaintiffs were permitted, over objection, to introduce in evidence the affidavit and also the return of the officer upon the summons. The affidavit reads as follows: "Fred Henderson being duly sworn deposes and says that he is the defendant in the above and foregoing action; that at the time of said alleged service as shown by said return, affiant was in the county of Natrona, Wyoming." The officer's return shows that the summons was served upon the defendant in Big Horn County, the county in which the suit was brought, on the 9th day of August, 1907.

The latitude of cross-examination is so largely within the discretion of the trial court, that it must, as a general rule, appear to have been flagrantly abused before a verdict will be disturbed on that ground. But there was clearly no error in allowing the cross-examination as to the statements made in the affidavit, the purpose being to show the making of statements contradicting his testimony. And, while it does not seem to have been necessary to introduce the affidavit, in view of the defendant's admission con-

cerning it, we perceive no error in permitting its introduction; but in any event it could not be held prejudicial. The purpose of offering the officer's return was no doubt to explain the affidavit as to the time referred to therein as "the time of the alleged service as shown by said return." For that purpose it was competent and relevant. If, as suggested, the service and return were invalid because of irregularity in the appointment of the special deputy to make the service, the matter is of no importance here. The return was not offered to show the jurisdiction of the court; the defendant had appeared and answered, and was present at the trial in person and by counsel contesting the right of plaintiffs to recover upon the merits.

10. Error is assigned upon the refusal of several instructions requested by the defendant. They were all properly refused. The court was requested to instruct that there was no evidence which entitled the plaintiffs to recover exemplary or punitive damages. There was some evidence bearing on that question sufficient, we think, to justify its submission to the jury. The following instruction was requested: "Before the declarations of any of the persons mentioned in plaintiffs' evidence can be binding upon the defendant in this action, it must be proven by a fair prepondenance of the evidence that the persons mentioned were at the time of the making of the declaration in the employ of the defendant, Henderson, and were at the time acting within the line of their authority, and while in the charge of the defendant's sheep, and while engaged in the act of taking or grazing the said sheep upon the lands of the plaintiffs." An instruction was given in the same words, except that it omitted the following: "and while engaged in the act of taking or grazing the said sheep upon the lands of the plaintiffs," and, therefore, unless the defendant was entitled to the instruction without the elimination of those words, no prejudice resulted from its refusal.

In the first place, while the question of agency and the extent of the agent's authority was for the jury to deter-

mine, whether the declarations were made at a time that would entitle them to consideration, if made by an agent acting within the line of his authority, was a question for the court, to be determined when they. were offered in evidence; and it was not necessary, therefore, to submit that matter to the jury.  But the instruction as requested was misleading, upon the facts in this case. · It is true that to render the declarations of an agent admissible in evidence they must appear to have been made under such circumstances as to form a part of the transaction in question. "They are of the nature of original evidence, and not of hearsay; the representation or statement of the agent, in such cases, being the ultimate fact to be proved, and not an admission of some other fact.  *  *  *  The party's own admission, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when it is made during the continuance of the agency in regard to a transaction then depending *et dum fervet opus.*  It is because it is a verbal act, and part of the *res gestae,* that it is admissible at all; and therefore it is not necessary to call the agent himself to prove it; but wherever what he did is admissible in evidence, there it is competent to prove what he said about the act while he was doing it; and it follows, that where his right to act in the particular matter in question has ceased, the principal can no longer be affected by his declarations, they being mere hearsay." (1 Greenleaf on Ev., Redfield's Ed., sec. 113.)

The trouble with the instruction as requested is that it might be understood by the jury as excluding such statements as those shown to have been made by Zimmerman to Coleman concerning his knowledge that the sheep were on his land, and his intention as to moving the camp; and those made to Hellmer to the effect that Henderson had told him to put the sheep there, and he would not move them until Henderson returned.  Yet we think that those statements· formed a part of the transaction, although at the moment he was away from the land and the sheep. He was not narrating a past occurrence; but was explain-

ing the act of taking and grazing the sheep on the land, and locating the camp thereon, while the sheep and camp were there and before the trespass had ceased. And the jury finding that he was defendant's agent and acting within the scope of his authority, his said statements were proper to be considered as statements made at the time of, and accompanying the performance of the act complained of. The jury might also have understood that the instruction excluded the declarations of Sherwin, which were shown to have been made immediately before arriving upon the land with the sheep, to the effect that he was going there, and had been directed to do so. Those statements were so intimately connected with the act of taking the sheep upon the land as to form a part of that act, or to use a common expression, as to constitute a part of the *res gestae*. It would be unreasonable to say that his statements explaining his acts made when he was just outside the boundary of the land and immediately before crossing it could not be considered because he was not then engaged in the act of taking or grazing the sheep upon the land. In a just and proper sense he was then engaged in the act of taking the sheep on the land, for he was driving the sheep toward the land for that purpose, and upon reaching it the sheep were driven upon the land and caused to remain and graze there in the manner and for the period above stated. And the statements made under the circumstances aforesaid were, we think, admissible.

11. One of the instructions refused excluded from the consideration of the jury all the testimony of the witness Hellmer relative to the value of the premises in question in connection with the adjoining range. This was covered by an instruction that was given; the jury being instructed thereby that they could not take into consideration the damages, if any, sustained by the plaintiffs by being deprived of the use of the pasturage on the range adjoining the lands in question. Further, the particular testimony referred to in the requested instruction seems to have gone in without an objection properly reaching it. It is found

in the answer to one or more questions not calling for it, and though the question may have been objected to, we do not find that any motion was made to strike out this testimony. The brief refers to other instructions that were refused, but the points involved therein have been considered. They excluded from the consideration of the jury all evidence relating to damages, if any, sustained in the shipment of cattle to market, and by the feeding of hay, and all the acts and declarations of the persons mentioned in the evidence of plaintiffs as having been in the defendant's employ. The evidence as to some of those acts was received without objection.

12. An instruction was given by the court to the effect that it is the duty of all persons to take notice of the stones and marks of the government survey, and that the plaintiffs were not required to place any other or different marks on their lands to indicate the boundaries thereof or to inclose such lands; and that the fact that plaintiffs had not inclosed their lands or otherwise marked the boundaries thereof would not permit the defendant or any other person to intentionally invade the premises and destroy the crops or grasses growing thereon or pollute the waters thereon. This instruction is excepted to on the ground that it was not based upon any evidence, it being argued that there was no evidence tending to show that the lands in question were marked by any monuments of the government survey. No prejudice, however, could possibly have resulted from the instruction, for it clearly appeared that the defendant and his employees were acquainted with the lands, and it was not claimed that there was any mistake or want of knowledge as to the boundaries thereof.

13. The objection to the sixth instruction that it assumed as proven the disputed fact that the sheep of defendant had been driven upon the land is untenable. We do not think it assumed such fact to have been proven. It charged that it was the duty of defendant to ascertain where these lands were and to prevent his sheep from being driven thereon and depasturing the same, if he had notice that the lands

belonged to the plaintiffs, or that they were entitled to the possession thereof. The facts as to the trespass and whether or not it was committed by the defendant, or by his sheep, were plainly submitted to the jury under other instructions.

14. Exception is taken to an instruction permitting the recovery of damages resulting directly from the trespass arising since the commencement of the suit. In Cosgriff v. Miller, *supra,* it was held that damages accruing after the commencement of suit may be recovered where they proceed from the act constituting the cause of action, and the rule on the subject is there fully explained. Counsel does not here contend that such damages may not be recovered in a proper case; but it is contended that the instruction was improper for the reason that the only damages to which it referred were those suffered in the marketing of the cattle, and the feeding of hay, and that the testimony relating to those matters should have been excluded. As we have held that the defendant was not entitled to the exclusion of the evidence referred to, the instruction cannot be held objectionable on the grounds stated.

15. It is contended that instruction number 21 was erroneously given for the reaosn that it was not shown that the defendant had ratified the acts of any of his employees in taking his sheep upon the premises or that he had accepted the benefits thereof with knowledge of the facts. The instruction contained a general statement of the law as to proving agency and the scope thereof; it being stated that such facts may be shown by circumstantial or other evidence in the same manner as any other fact; and that the jury may consider the conduct of the parties whether one has been put in custody or control of property, or in charge of a business, or whether the acts have been ratified or the benefits thereof accepted or acquiesced in after a knowledge of the facts, if such evidence appears, together with all other competent evidence in the case. We see nothing prejudicial in the instruction; and, though we recall no evidence directly showing a ratification, there was testimony tending

to show knowledge on the part of defendant that his sheep were on the premises, and that he was consenting thereto.

16. The eleventh instruction given to the jury relates to exemplary damages. It is not objected to as containing, standing alone, an incorrect statement of the law on that subject, but it is contended that such an instruction was not warranted by the facts in the case, and that it was clearly erroneous in connection with the twenty-second instruction, which reads as follows: "In the instructions given you herein, reference has been made in numerous instances to the defendant; instructing you as to the legal effect in case you find that the defendant did such and such acts. As the employer is responsible for the trespass committed by the employee while acting within the scope of his employment and in pursuance of his employer's business, you should in each instance where the defendant is mentioned, find him equally responsible, if you shall find the specific acts to have been committed—not by him, but by his employees while acting as above indicated; and each of the within instructions is to be construed in the light of this instruction, without the repetition of the words referring to his employees." The two instructions, it is urged, permitted the jury to award exemplary damages, without regard to whether the defendant personally participated in, or directed the trespass, if it was found to have been committed by some one in his employ; and that the true rule is that exemplary damages are not recoverable, unless the defendant himself committed the trespass in a wanton, malicious or reckless manner, or participated with others in the commission of such trespass in such oppressive manner, or authorized or directed another to commit such trespass, citing: Ry. Co. v. Prentice, 147 U. S. 110, and Warner v. S. Pac. Co., 113 Cal. 105.

There is a decided conflict in the authorities upon the question whether a defendant, especially if the defendant be a corporation, can be held liable for exemplary damages for the malicious, fraudulent, reckless, or oppressive acts of servants or agents, where it does not appear that such

acts were previously authorized or subsequently ratified by the defendant, or that such defendant has retained the agent in his or its employment after knowledge of his bad conduct, or has failed to exercise proper care in choosing him or in retaining him in his or its service. It is said in a note to Spellman v. Richmond, etc., R. R. Co., 28 Am. St. 858, 876, that, "perhaps in the majority of cases in which the wrong-doer was a natural person acting by his agent or servant, he has not been held answerable in exemplary damages for the fraud, malice, or oppression of such agent or servant which he neither previously authorized nor subsequently ratified," citing: Mendelsohn v. Anaheim L. Co., 40 Cal. 657; Pollock v. Gantt, 69 Ala. 373, 44 Am. R. 519; Eviston v. Cramer, 57 Wis. 570; Grund v. Van Vleck, 69 Ill. 478. But we think it unnecessary to determine that question. In order to render the verdict they did, the jury must have found that the sheep driven and grazed upon the land were the defendant's, thereby accepting the evidence in relation to the matter introduced by the plaintiffs. That evidence tended so strongly to show not only that the defendant had knowledge of the trespass, but that he had directed it, that it cannot reasonably be conceived that the jury could have found for the plaintiffs upon the theory that the trespass had been committed by the defendant's agents or servants without his knowledge or approval. It is more than doubtful whether exemplary damages were included in the verdict for the evidence as to actual damages would seem to authorize a verdict for even a larger amount than that returned, and the most reasonable explanation of the verdict in that respect would seem to be that the jury had minimized the actual damages shown by the evidence, and returned a verdict for the amount thereof. But the evidence upon which exemplary damages might be claimed or allowed, under the eleventh instruction, stating the rule for awarding such damages, relates mostly to statements made by the defendant himself, and the directions given by him to his employees with reference to this particular trespass; and we cannot otherwise conclude

than that if any exemplary damages were awarded they were based upon the evidence tending to show the personal motives and conduct of the defendant with reference to the trespass.

17. The ninth instruction given to the jury is excepted to on the ground that there was no evidence justifying it, and the further ground that it permitted consideration of special damages. The part claimed to be objectionable because allowing special damages authorized the jury to consider, in assessing damages, the business in which plaintiffs were engaged and the purpose for which they were using the premises, and the injury to their stock, if any, directly occasioned by the trespass. The instruction is not objectionable, in our opinion, on either of the grounds stated.

18. It is finally contended that the damages awarded are excessive, and that there is not sufficient evidence to sustain the verdict. What has been said above as to the damages awarded sufficiently answers the contention that they are excessive. The verdict may have included the sum of $150, expended in gathering the cattle, which expense we have held was not recoverable under the pleadings, and the effect thereof remains to be considered. After carefully reviewing the evidence we are satisfied that it is amply sufficient to support the verdict. So far as there is a conflict in the testimony it was fairly submitted to the jury, and they have passed upon it, and no reason is perceived for departing from the usual rule in such cases.

The only error we find in the record is the admission in evidence of testimony showing the expense of gathering the cattle. That error was prejudicial to the defendant to the extent only that there may have been a recovery for such expense. The jury could not possibly have included in the verdict on account of that matter a greater amount than $150, for that was the total amount of the expense as shown in the evidence; and that being clearly ascertainable, the error does not require a reversal of the judgment, if the plaintiffs below prefer to remit the amount that may have been erroneously included. (Kavanaugh v.

Janesville, 24 Wis. 618; R. R. Co. v. Himrod Co., 37 O. St. 434, 443; Marietta Iron Works v. Lottimer, 25 O. St. 621; Ry. Co. v. Meyer (Kan.), 49 Pac. 89; Salida v. McKinna (Colo.), 27 Pac. 810; Loewer v. Harris, 57 Fed. 368; Greve v. Oil Co. (Cal.), 96 Pac. 904; Hurlbut v. Hardenbrook, 85 Ia. 606; St. Ry. Co. v. Cotton, 140 Ill. 486; 3 Cyc. 435, 436; Bank v. Luman, 6 Wyo. 123.) It will therefore be ordered that if the defendants in error, plaintiffs below, shall within twenty days after the filing of the mandate in the trial court remit from the verdict said sum of $150, so as to reduce the judgment to that extent, by filing a proper statement to that effect in said court, the judgment will stand affirmed; otherwise the judgment will be reversed, and the cause remanded for new trial. If such remittitur is filed our order will amount in effect to an affirmance in part and a reversal in part, within the meaning of section 5126, Compiled Statutes, 1910, authorizing in such case an apportionment of the costs between the parties in such manner as the court deems equitable. (Rock Springs Nat'l Bank v. Luman, 47 Pac. 73.) And the docket costs in this court and one-third of the costs here taxable for the transcript of the evidence and briefs will then be taxed against the defendants in error. If the judgment is allowed to be reversed by failure to file the remittitur the plaintiff in error will, of course, recover his costs in this court.

BEARD, C. J., and SCOTT, J., concur.

## ON PETITION FOR REHEARING.

PER CURIAM.

A petition for rehearing has been filed by plaintiff in error. No new point is presented, but the admission of the return upon the summons in the case referred to in the ninth numbered paragraph or proposition in the former opinion it is earnestly contended was particularly erroneous and prejudicial for the reason that the one who made such return was not regularly appointed as special deputy to make the service, as shown by the endorsements on the

process, and it ought not to have been used, as it was, as tending to impeach the plaintiff in error as a witness. It is strenuously argued that this item of evidence had the effect of turning the scales in favor of plaintiffs below upon the conflict in the evidence. As we view the matter the fact as to the regularity of the appointment of the special deputy sheriff was of no importance, and did not affect the relevancy or admissibility of the return. It was relevant to show the date of the alleged service upon the defendant below as explaining his affidavit referring generally to that return. If these matters were used in argument to the jury, as suggested, as impeaching the testimony of the defendant below, it occurs to us that the impeaching matter was not the return, but the affidavit of the defendant himself. Further, the defendant admitted on his cross-examination that the date of the alleged service of summons upon him was the 9th or 10th of August, and, as the return showed a service on the 9th of August, the latter can hardly be held to have been prejudicial. The defendant testified in the same connection that the summons had not been served upon him, while admitting that it was claimed or alleged to have been served. The return, if anything, tended to reduce the effect of this matter as impeachment, since it afforded an opportunity to attack in argument the force of the return, if, as here urged, there exists any good ground for challenging the method of appointing the deputy to make service of the summons, and, without the return, the jury had before them the admission of the defendant that service upon him at a certain time was alleged, and such service might otherwise have been supposed to have been made, or alleged to have been made, by the sheriff himself. But we are satisfied with the comment and conclusion upon this matter in the original opinion.

We have carefully considered the argument presented in support of the petition for rehearing in relation to all the matters therein referred to, and perceive no good reason for re-opening the case. If the plaintiff has been so grossly wronged by the verdict, as counsel insists, we are convinced

that, except as stated in the former opinion, it has not re-
sulted from prejudicial errors committed by the court. Re-
hearing will be denied.